IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| MICHALE M. DIXON, | ) | 4:13CV3204 |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| DENISE SKROBECKI, Warden, | ) | |
| | ) | |
| Respondent. | ) | |

This matter is before the court on Petitioner Michale Dixon's ("Petitioner" or "Dixon") Amended Petition for Writ of Habeas Corpus. (Filing No. 10.) For the reasons that follow, the court will dismiss three of Dixon's claims and order additional briefing on one claim.

Liberally construed, Dixon argues she is entitled to a writ of habeas corpus based on the following claims:

> Claim One: Petitioner was denied the constitutional right to retain counsel of her own choosing.
>
> Claim Two: Petitioner received the ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments because trial counsel did not file an interlocutory appeal asserting Petitioner's right to retain counsel of her choosing, or advise Petitioner that such an appeal was possible.
>
> Claim Three: Petitioner's due process rights were violated when the state district court proceeded to sentencing immediately after the plea hearing.

> Claim Four: Petitioner's due process rights were violated when the state district court sentenced her as a habitual criminal.

(Filing No. 11 at CM/ECF pp. 1-2.)

## I.  BACKGROUND

### A.  Conviction and Sentence

Dixon's conviction and sentence arise out of the District Court of Lancaster County, Nebraska ("state district court"). The following facts, set forth by the Nebraska Supreme Court, are relevant to Dixon's habeas corpus claims:

> On April 9, 2012, Dixon was charged with the unauthorized use of a financial transaction device with a value between $500 and $1,500, and with another offense in a separate case. . . . The public defender's office was appointed to represent Dixon on both sets of Dixon's offenses, because she was found to be indigent.
>
> On June 28, 2012, the public defender and the prosecutor assigned to this case appeared before the district court, with Dixon present, and informed the court that they both had been contacted repeatedly by attorney Frank Robak, Sr., about the case. The public defender and the prosecutor informed the court that Robak had been paid a retainer fee by Dixon's fiance to represent Dixon, but had not entered a formal appearance in the case. Dixon reported to the public defender that she had paid Robak enough money for him to enter a plea on Dixon's behalf, but that Robak was requesting more money to proceed with a jury trial. The public defender further explained that Dixon had requested a continuance in the case so that Dixon could gather the funds necessary to retain Robak and proceed with trial. The prosecutor informed the court that she had no objection to the continuance of the matter so that Dixon could obtain funds to retain Robak for representation.

The court allowed for the continuance, and Dixon waived all of her rights to a speedy trial on the record. The court further explained to Dixon that because Robak had never entered an appearance in the case, he was not currently representing Dixon and that the public defender was her current counsel. A status hearing was scheduled for July 24, 2012, for the parties to inform the court as to whether Dixon was able to retain Robak.

On July 18, 2012, Robak filed a "Limited Appearance of Counsel" on behalf of Dixon for the "limited purpose of attempting immediate resolution of this case without necessity of a trial or complex hearings." A week after this filing, on July 24, the court conducted the scheduled status hearing with the public defender and the prosecutor present. Robak was not present at the hearing. The court reported on the record that Robak confirmed with the court and the various parties in chambers the week prior that he would not be representing Dixon and that he would be withdrawing his limited appearance. The court further noted that pursuant to Neb. Ct. R. of Prof. Cond. § 3-501.2(d) (rev. 2008), a limited appearance may be entered by a lawyer only when a party is not represented and that it considered Robak's limited appearance a "nullity," regardless of whether Robak was going to withdraw it. The court then made a docket entry reflecting this finding.

On July 30, 2012, the public defender and the prosecutor appeared before the district court again, with Dixon present, to address Robak's continued contact with Dixon. According to Dixon's public defender, Robak continued to communicate with Dixon regarding the case. The public defender reported Robak had instructed Dixon to inform the court that Dixon supported his limited appearance and that the court should take notice of this. The court refused to take such notice, again noting that "a person may enter a limited appearance for a person who is not represented" and that "Dixon is represented." The court further instructed Dixon that Robak had to fully represent her or not represent her at all. The court explained to Dixon that Robak had previously told the court in chambers prior to the July 24 status hearing that he would represent Dixon in seeking a plea, but not if the case went to trial. However, there was no plea offer before the court. Thus, the court found Robak was not representing Dixon. Dixon's case was then placed on the court's trial list for the September term.

>On August 1, 2012, the court sent a letter to Robak, with copies to the prosecutor and the public defender. The letter stated that the court understood that Robak was going to withdraw his limited appearance, as he had indicated at the July 18 in-chambers meeting, but that he had failed to do so. The letter further reported that the Nebraska rules on limited representation do not permit a lawyer to enter a limited appearance on behalf of a person who is represented by counsel. The letter contained a copy of § 3-501.2(d) and explained that the public defender was Dixon's current attorney unless the court specifically gave the public defender permission to withdraw from the case.
>
>On August 30, 2012, Dixon pled no contest to the unauthorized use of a financial device with a value between $500 and $1,500. The court found that Dixon understood her rights and the consequences of waiving those rights and that Dixon's waiver was freely, voluntarily, knowingly, and intelligently given. The court accepted Dixon's plea. In exchange for Dixon's plea of no contest, the offense charged in Dixon's other case was dismissed. Dixon then reported to the court that she was satisfied with the job the public defender had done in this matter. After the court accepted Dixon's plea, it asked Dixon if she wanted to be sentenced that day. Dixon answered affirmatively and confirmed she had discussed this with counsel.
>
>An enhancement hearing was then held, and the prosecution entered five exhibits into evidence relating to Dixon's various prior convictions. . . . Dixon objected to the admittance of the exhibits[.] . . . The court found all of Dixon's objections to be collateral attacks on the earlier judgments. The court then found Dixon to be a habitual criminal for purposes of enhancement and sentenced Dixon to 10 to 20 years' imprisonment.

*State v. Dixon*, 835 N.W.2d 643, 646-48 (Neb. 2013).

**B.     Direct Appeal**

Dixon appealed her conviction and sentence. She argued on appeal that (1) her Sixth Amendment right to counsel was denied when private counsel was prohibited

from entering a limited appearance in her case, (2) her trial counsel was ineffective, and (3) the state district court erred in sentencing her on the same day it accepted her plea. (Filing No. 13-3 at CM/ECF pp. 10-20.)

On January 18, 2013, the Nebraska Supreme Court ordered the case moved to its docket from the docket of the Nebraska Court of Appeals. (Filing No. 13-1 at CM/ECF p. 2.) The Nebraska Supreme Court affirmed Dixon's conviction and sentence on June 28, 2013. *Dixon*, 835 N.W.2d at 650.

Dixon did not file a postconviction action in the state district court. (*See* Filing No. 10 at CM/ECF p. 3.)

### C. Petition

Dixon filed her habeas corpus petition in this court on December 9, 2013. (Filing No. 1.) She filed an amended habeas corpus petition on January 6, 2014. (Filing No. 10.) In response to the amended petition, Respondent filed an answer, a brief in support of the answer, and the relevant state court records. (Filing Nos. 13, 14, and 15.) In lieu of filing a brief in response to Respondent's answer and brief, Dixon filed a copy of the appellate court brief she filed in the Nebraska Supreme Court. (*See* Filing No. 16.)

## II. STANDARD OF REVIEW

When a state court has adjudicated a habeas petitioner's claim on the merits, there is a very limited and extremely deferential standard of review both as to the law and the facts. *See* 28 U.S.C. § 2254(d). Section 2254(d)(1) states that a federal court may grant a writ of habeas corpus if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). As explained by the Supreme Court in *Williams v. Taylor*, 529 U.S. 362 (2000), a state court acts

contrary to clearly established federal law if it applies a legal rule that contradicts the Supreme Court's prior holdings or if it reaches a different result from one of that Court's cases despite confronting indistinguishable facts. 529 U.S. at 405-406. Further, "it is not enough for [the court] to conclude that, in [its] independent judgment, [it] would have applied federal law differently from the state court; the state court's application must have been objectively unreasonable." *Rousan v. Roper*, 436 F.3d 951, 956 (8th Cir. 2006).

With regard to the deference owed to factual findings of a state court's decision, Section 2254(d)(2) states that a federal court may grant a writ of habeas corpus if a state court proceeding "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Additionally, a federal court must presume that a factual determination made by the state court is correct, unless the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

As the Supreme Court noted, "[i]f this standard is difficult to meet, that is because it was meant to be." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011). The deference due state court decisions "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Id.* Indeed, "[i]t bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* However, this high degree of deference only applies where a claim has been adjudicated on the merits by the state court. See *Brown v. Luebbers*, 371 F.3d 458, 460 (8th Cir. 2004) ("[A]s the language of the statute makes clear, there is a condition precedent that must be satisfied before we can apply the deferential AEDPA standard to [the petitioner's] claim. The claim must have been 'adjudicated on the merits' in state court.").

6

The Eighth Circuit clarified what it means for a claim to be adjudicated on the merits, finding that:

> AEDPA's requirement that a petitioner's claim be adjudicated on the merits by a state court is not an entitlement to a well-articulated or even a correct decision by a state court. . . . Accordingly, the postconviction trial court's discussion of counsel's performance–combined with its express determination that the ineffective-assistance claim as a whole lacked merit–plainly suffices as an adjudication on the merits under AEDPA.

*Worthington v. Roper*, 631 F.3d 487, 496-97 (8th Cir. 2011) (internal quotation marks and citations omitted). The court also determined that a federal court reviewing a habeas claim under AEDPA must "look through" the state court opinions and "apply AEDPA review to the 'last reasoned decision' of the state courts." *Id.* at 497. A district court should do "so regardless of whether the affirmance was reasoned as to some issues or was a summary denial of all claims." *Id.* Similarly, the Supreme Court wrote:

> There is no text in the statute requiring a statement of reasons. The statute refers only to a "decision," which resulted from an "adjudication." As every Court of Appeals to consider the issue has recognized, determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning.

*Harrington*, 131 S. Ct. at 784.

### III. DISCUSSION

**A. Claim One**

Dixon argues she was denied the right to retain counsel of her choosing. As set forth in the background section of this order, the state district court did not allow Frank

Robak to represent Dixon because he had not entered a full appearance in her case. Dixon raised this claim to the Nebraska Supreme Court, which in turn, considered and rejected the claim. The Nebraska Supreme Court wrote, in relevant part:

> In her first assignment of error, Dixon argues that the district court denied her Sixth Amendment right to counsel of her choosing by not allowing Robak to enter a limited appearance in this case. Dixon's argument is without merit.
>
> The Sixth Amendment to the U.S. Constitution provides that "[i]n all criminal prosecutions, the accused shall . . . have the Assistance of Counsel for his [or her] defence." This court has held that an indigent criminal defendant's Sixth Amendment right to counsel does not include the right to counsel of the indigent defendant's own choice.[] On appeal, Dixon does not contest that she was found to be indigent. As such, Dixon's argument regarding her choice of counsel is without merit.

*Dixon*, 835 N.W.2d at 163.

The Nebraska Supreme Court's findings of fact and conclusions of law are entitled to deference under the statutory standard of review that applies to factual and legal conclusions reached by the state courts. Dixon has not argued, much less established, that the Nebraska Supreme Court's decision resulted from an unreasonable factual or legal conclusion. Regardless, it is apparent from the record that the state district court did not *refuse* to allow Dixon to retain Frank Robak to represent her. Indeed, the court even granted a continuance in order to allow Dixon the ability to do so. (*See* Filing No. 13-6 at CM/ECF pp. 15-19.) However, Robak either failed to or refused to enter a full appearance in Dixon's case in accordance with Nebraska's rules of professional conduct. Dixon's claim that the state district court somehow violated her Sixth Amendment rights in the manner alleged is without merit.

**B.     Claim Two**

Dixon argues her trial counsel was ineffective because she did not file an interlocutory appeal asserting Dixon's right to retain counsel of her choosing. The two-pronged standard of *Strickland v. Washington*, 466 U.S. 668 (1984), governs the merits of Dixon's argument.

*Strickland* requires that the petitioner demonstrate both that his counsel's performance was deficient, and that such deficient performance prejudiced the petitioner's defense. *Id.* at 687. The first prong of the *Strickland* test requires that the petitioner demonstrate that his attorney failed to provide reasonably effective assistance. *Id.* at 687-88. The second prong requires the petitioner to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A court need not address the reasonableness of the attorney's skills and diligence if the movant cannot prove prejudice under the second prong of this test. *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996).

Dixon cannot show prejudice under the second prong of the *Strickland* test. The Nebraska Supreme Court correctly determined that Dixon's argument regarding her choice of counsel was without merit. Accordingly, Dixon could not have been prejudiced by her trial counsel's failure to raise the issue in an interlocutory appeal, particularly where the issue was later raised and rejected on direct appeal.

**C.    Claim Three**

Dixon argues her due process rights were violated when the state district court proceeded to sentencing immediately after the plea hearing. The Nebraska Supreme Court considered and rejected this claim. It wrote, in relevant part:

> In her final assignment of error, Dixon asserts that the district court erred in sentencing her on the same day that her plea was taken. Dixon contends that the objections she made at her enhancement hearing related

9

> to her past convictions demonstrated to the court that certain issues on appeal could affect the enhancement of her sentence. Dixon argues here that the court should have waited until those matters were decided before sentencing her.
>
> The district court confirmed with Dixon, however, that she wanted to be sentenced on the same day her plea was taken and that she had discussed this with counsel. "It has long been the rule in this state that a party cannot complain of error which he [or she] has invited the court to commit." [] Dixon's final assignment of error is without merit.

*Dixon*, 835 N.W.2d at 165-66.

The Nebraska Supreme Court's findings of fact and conclusions of law on this issue are entitled to deference under the statutory standard of review that applies to factual and legal conclusions reached by the state courts. Dixon has not argued, much less demonstrated, that the Nebraska Supreme Court's decision was contrary to, or an unreasonable application of, clearly established federal law. In addition, Dixon has not challenged the Nebraska Supreme Court's factual findings, nor could she. The record plainly shows that, when Dixon informed the court she wanted to proceed to sentencing immediately after the plea hearing, she knew the charges against her and their possible penalties. She acknowledged that she had discussed the matter with her trial counsel, and that she understood she was waiving her right to have a presentence investigation report prepared for use at sentencing. (Filing No. 13-6 at CM/ECF p. 54.) Accordingly, the court finds Dixon is not entitled to relief on this claim.

**D.     Claim Four**

Dixon argues her due process rights were violated when the state district court sentenced her as a habitual criminal. (Filing No. 10 at CM/ECF p. 14.) Respondent failed to address this claim in his answer and brief. (*See* Filing Nos. 14 and 15.)

10

A state prisoner must fairly present the substance of each federal constitutional claim to the state courts *before* seeking federal habeas corpus relief. *See* 28 U.S.C. § 2254(b)(1). The United States Supreme Court has explained the habeas exhaustion requirement as follows:

> Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts . . . state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.

*O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

Dixon did not raise the substance of Claim Four on direct appeal to the Nebraska Supreme Court. (*See* her appellate brief at Filing No. 13-3 at CM/ECF pp. 1-21.) Moreover, she cannot now raise the claim in a motion for postconviction relief in state court because such a motion "cannot be used to secure review of issues which were or could have been litigated on direct appeal." *Hall v. State*, 646 N.W.2d 572, 579 (Neb. 2002). Thus, Claim Four appears to be procedurally defaulted. However, before the court can make such a finding, it must give the parties fair notice and an opportunity to present their positions on the issue. *See Dansby v. Hobbs*, 766 F.3d 809, 824 (8th Cir. 2014) ("A federal court has discretion to address procedural default in a habeas corpus case despite the State's failure to present the issue properly. The Supreme Court has held that before a court may address *sua sponte* a different procedural defense—timeliness of a habeas petition—it must give the parties fair notice and an opportunity to present their positions. The same requirements of notice and opportunity to be heard should apply when a federal court chooses to address procedural default on its own initiative.") (internal citations omitted).

In light of the foregoing, the court will dismiss Claims One, Two, and Three, with prejudice, and provide the parties with an opportunity to be heard on Claim Four of the habeas corpus petition.

IT IS THEREFORE ORDERED that:

1. Claims One, Two, and Three are dismissed with prejudice.

2. Respondent must file a supplemental answer and brief addressing Claim Four within 30 days.

3. No later than 30 days after the filing of Respondent's supplemental answer and brief, Dixon must file a brief in response.

4. The clerk's office is directed to set a pro se case management deadline in this matter: March 9, 2015: check for parties responses to Claim Four.

DATED this 8th day of January, 2015.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.