IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| MICHALE M. DIXON, | ) | 4:13CV3204 |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| DENISE SKROBECKI, Warden, | ) | |
| | ) | |
| Respondent. | ) | |

On January 8, 2015, the court dismissed three of the four claims raised by Petitioner Michale Dixon ("Dixon") in her Amended Petition for Writ of Habeas Corpus ("amended petition") (Filing No. 10). (*See* Filing No. 18.) This matter is before the court for disposition of her fourth claim. Dixon argues in her fourth claim that her due process rights were violated when the state district court sentenced her as a habitual criminal.

I. BACKGROUND

Dixon's conviction and sentence arise out of the District Court of Lancaster County, Nebraska ("state district court"). On August 30, 2012, Dixon pled no contest to the unauthorized use of a financial device with a value between $500 and $1,500. Following Dixon's plea, Dixon confirmed that she wanted to be sentenced immediately. The prosecution entered five exhibits into evidence relating to Dixon's various prior convictions. Dixon objected, and the court overruled her objections, finding that all of Dixon's objections were impermissible collateral attacks on the earlier judgments. The court then found Dixon to be a habitual criminal for purposes of enhancement and sentenced her to 10 to 20 years' imprisonment. *State v. Dixon, 835 N.W.2d 643, 646-48 (Neb. 2013)*. The Nebraska Supreme Court affirmed Dixon's conviction and sentence on June 28, 2013. *Id.* at 650. Dixon did not file a

postconviction action in the state district court. (*See* Filing No. 10 at CM/ECF p. 3.)

Dixon filed her Petition for Writ of Habeas Corpus ("petition") (Filing No. 1) in this court on December 9, 2013. She filed her amended petition (Filing No. 10) on January 6, 2014, in which she raised the following claims: (1) she was denied the constitutional right to retain counsel of her own choosing; (2) she received the ineffective assistance of trial counsel; (3) her due process rights were violated when the state district court proceeded to sentencing immediately after the plea hearing; and (4) her due process rights were violated when the state district court sentenced her as a habitual criminal.

In response to the amended petition, the respondent filed an answer and a brief addressing only the first three claims (*see* Filing Nos. 14 and 15). The court dismissed Dixon's first three claims in an order dated January 8, 2015 (*see* Filing No. 18). The court noted in its order that Dixon's fourth claim appeared to be procedurally defaulted, but ordered the parties to present their positions on the issue. See *Dansby v. Hobbs*, 766 F.3d 809, 824 (8th Cir. 2014) ("The [] requirements of notice and opportunity to be heard should apply when a federal court chooses to address procedural default on its own initiative.") (internal citations omitted).

The respondent filed a supplemental answer and a supplemental brief (Filing Nos. 19 and 20) addressing Dixon's fourth claim on February 2, 2015. Dixon filed a supplemental brief (Filing No. 21) in response on February 26, 2015.

## II. DISCUSSION

Dixon argued in her fourth claim for relief that her due process rights were violated when the state district court sentenced her as a habitual criminal (Filing No. 10 at CM/ECF p. 14). The respondent argued this claim is procedurally defaulted

(Filing No. 20). The question before the court is whether Dixon presented the claim to Nebraska's state courts before seeking federal habeas corpus relief and, if not, whether she is now barred from doing so.

A state prisoner must fairly present the substance of each federal constitutional claim to the state courts *before* seeking federal habeas corpus relief. *See* 28 U.S.C. § 2254(b)(1). The United States Supreme Court has explained the habeas exhaustion requirement as follows:

> Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts . . . state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.

*O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

Dixon did not raise the substance of her fourth claim on direct appeal to the Nebraska Supreme Court. (*See* Filing No. 13-3, Dixon's brief on direct appeal.) Moreover, she cannot now raise the claim in a motion for postconviction relief in state court because a postconviction motion "cannot be used to secure review of issues which were or could have been litigated on direct appeal." *Hall v. State*, 646 N.W.2d 572, 579 (Neb. 2002). Accordingly, the court finds Dixon's fourth claim is procedurally defaulted.

The court must next consider whether Dixon has shown cause and prejudice to excuse the procedural default of her fourth claim. When a procedural default has occurred, federal habeas review is permitted only if the petitioner can demonstrate (1) cause for the default and actual prejudice as a result of the alleged violation of federal

law, or (2) that failure to consider the claim will result in a fundamental miscarriage of justice. Coleman v. Thompson, 501 U.S. 722, 750 (1991).

### A. Cause and Prejudice

Liberally construed, Dixon argues her appellate counsel's failure to raise the substance of her fourth claim on direct appeal constitutes cause for the default of her claim; the implication being that, had counsel raised the claim, Nebraska's appellate courts would have vacated her sentence. (Filing No. 21 at CM/ECF pp. 3-5.)

The Supreme Court discussed counsel's ineffectiveness in the procedural-default context in Edwards v. Carpenter, 529 U.S. 446 (2000). The court stated the following:

> Although we have not identified with precision exactly what constitutes "cause" to excuse a procedural default, we have acknowledged that in certain circumstances counsel's ineffectiveness in failing properly to preserve the claim for review in state court will suffice. Not just any deficiency in counsel's performance will do, however; the assistance must have been so ineffective as to violate the Federal Constitution. In other words, ineffective assistance adequate to establish cause for the procedural default of some *other* constitutional claim is *itself* an independent constitutional claim. And we held in *Carrier* that the principles of comity and federalism that underlie our longstanding exhaustion doctrine—then as now codified in the federal habeas statute, see 28 U.S.C. §§ 2254(b), (c)—require *that* constitutional claim, like others, to be first raised in state court. "[A] claim of ineffective assistance," we said, generally must "be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default."

*Id.* at 451 (some internal citations and quotation marks omitted) (quoting Murray v. Carrier, 477 U.S. 478, 489 (1986)).

Dixon did not argue in Nebraska's state courts that her appellate counsel was ineffective for failing to challenge the habitual-criminal enhancement. She could have raised this argument in a postconviction action in the state district court, but she did not file a postconviction action. Separately, she may be barred from doing so now. *See* Neb. Rev. Stat. § 29-3001(4) (providing that a one-year limitation period applies to the filing of a motion for postconviction relief). As set forth in *Edwards*, principles of comity and federalism underlying the exhaustion doctrine required Dixon to first raise her argument concerning counsel's ineffectiveness as a separate constitutional claim in Nebraska's state courts, which she did not do. Therefore, the court finds Dixon has not satisfied the cause-and-prejudice standard with respect to the fourth claim for relief raised in her amended petition.

Furthermore, even if Dixon had exhausted her argument in state court, she has not shown that she was actually prejudiced by her appellate counsel's failure to challenge the habitual-criminal enhancement on direct appeal. The State of Nebraska's evidence in a habitual criminal proceeding must:

> establish with requisite trustworthiness, based upon a preponderance of the evidence, that (1) the defendant has been twice convicted of a crime, for which he or she was sentenced and committed to prison for not less than 1 year; (2) the trial court rendered a judgment of conviction for each crime; and (3) at the time of the prior conviction and sentencing, the defendant was represented by counsel or had knowingly and voluntarily waived representation for those proceedings.

*State v. Kinser*, 811 N.W.2d 227, 230 (Neb. 2012).

The court has carefully reviewed the exhibits offered by the prosecution at Dixon's enhancement hearing (*see* Filing No. 13-6 at CM/ECF pp. 61-132). They show that in 2000, Dixon was sentenced to two separate terms of imprisonment for 1 to 3 years, to run concurrently, for two counts of second degree forgery; in 2005,

5

Dixon was sentenced to two separate terms of imprisonment for 6 to 10 years for burglary and criminal possession of a financial transaction device. *See Dixon*, 835 N.W.2d at 647. These exhibits demonstrate that Dixon was more than twice convicted of a crime for which she was sentenced and committed to prison for not less than one year, a state district court rendered a judgment of conviction for each crime, and Dixon was represented by counsel at the time of each prior conviction and sentencing. Because these exhibits demonstrate that Dixon was properly sentenced as a habitual criminal under Neb. Rev. Stat. § 29-2221(1), she was not prejudice by counsel's failure to dispute the enhancement on direct appeal.

### B. Miscarriage of Justice

Dixon did not argue that failure to consider her procedurally-defaulted claim would result in a fundamental miscarriage of justice. Moreover, in order to excuse default for a fundamental miscarriage of justice, a habeas petitioner must "present new evidence that affirmatively demonstrates that [s]he is innocent of the crime for which [s]he was convicted." *Abdi v. Hatch*, 450 F.3d 334, 338 (8th Cir. 2006). Dixon presents no new evidence that would affirmatively demonstrate her innocence. For all of the reasons set forth above, and in the court's order dated January 8, 2015, Dixon is not entitled to habeas corpus relief on any of the claims raised in her petition or her amended petition.

### III. CERTIFICATE OF APPEALABILITY

A petitioner cannot appeal an adverse ruling on her petition for writ of habeas corpus under § 2254 unless she is granted a certificate of appealability. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A certificate of appealability cannot be granted unless the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's

assessment of the constitutional claims debatable or wrong." *Slack v. Daniel,* 529 U.S. 473, 484 (2000).

In this case, Dixon did not make a make a substantial showing of the denial of a constitutional right. The court is not persuaded that the issues raised in Dixon's petition are debatable among reasonable jurists, that a court could resolve the issues differently, or that the issues deserve further proceedings. Accordingly, the court will not issue a certificate of appealability in this case.

IT IS THEREFORE ORDERED that:

1. Dixon's petition (Filing No. 1) and amended petition (Filing No. 10) are dismissed with prejudice.

2. The court will enter a separate judgment in accordance with this Memorandum and Order.

3. The court will not issue a certificate of appealability.

DATED this 15th day of June, 2015.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.